### WESTERN UNION TEL. CO. v. TEXAS EMPLOYMENT COMMISSION et al.

#### No. 4824.

Court of Civil Appeals of Texas. El Paso.

July 20, 1951.

Rehearing Denied Aug. 8, 1951.

J. A. C. McGann, New York City, Kemp, Smith, Brown, Goggin & White, El Paso, for appellant.

Lee G. Williams, Austin, Chas. P. Atkinson, Ass't Atty. Gen., Price Daniel, Atty. Gen., for appellees.

SUTTON, Justice.

This appeal is from the El Paso County Court at Law and the suit originated in an application for unemployment benefits made by Celia Simental to the Texas Employment Commission, and an award made to her on the application. The Western Union appealed from the award to the El Paso County Court at Law and from a judgment of that Court affirming the award this appeal is prosecuted to this Court.

Celia Simental was an employee of the Western Union on May 12, 1949, and for a number of years prior thereto in its El Paso office. Her services were dispensed with on May 12, 1949, because of no fault of hers but because her services were no longer needed nor required by the Company. Celia Simental and numerous other employees of the Company were discharged because no longer needed as the result of the installation of "reperferator" machines which relayed messages from one point to another mechanically and automatically in lieu of the manual relay of such messages by employees. Apparently in anticipation of such displacements the Company and the American Federation of Labor, the bargaining agency for such employees of the Company, negotiated a contract a provision of which provided for certain protective benefits for such employees. There were five benefits provided for in the contract. Only two of them were available to Celia Simental, the acceptance of severance allowance and forced-reduction furlough. These were elective and Celia Simental elected to take the severance allowance.

Under the contract provision severance allowance was computed on the basis of length of service and was fixed at four weeks' pay, at the regular rate of the position last occupied, for every year of service, and two days' pay for every month in which the employee worked in any period remaining that is less than a full year. Celia Simental's severance allowance thus computed amounted to $994.56, which she was paid together with $105.17 vacation pay for twelve days which she had earned but had not received. The receipt of these sums, it is urged, rendered Celia Simental ineligible to receive the benefits applied for and awarded by the Texas Employment Commission. The contention made by Western Union is the sums of money paid to Celia Simental represent wages paid to

her for twenty-two weeks and fourteen days immediately subsequent to her discharge by the Company and renders her ineligible to receive the unemployment benefits. She and the Commission take the position such sums represent wages received with respect to past services rendered and, therefore, do not have such effect under the provisions of the Texas statutes, Art. 522b–1 et seq., Vernon's Ann. Civ.St.

It is agreed by the parties the payments represent wages, and that the Company paid taxes thereon. The Commission was and is in no position to agree otherwise, but it is not necessary for us here to decide whether or not such sums are wages nor to determine if the tax was due thereon. The sole question presented is, Did the payment and receipt of the sums above render Celia Simental ineligible to receive the unemployment benefits under the statute, supra? We think not. The question must be answered by a reference to and application of the statute. It is admitted the Company was under a contract obligation to pay the money paid by it and in compliance with the terms of the contract it did pay without question. The Company merely discharged a contract obligation and the payments regardless of how regarded represent the performance of that obligation. It is not claimed the money was paid for any service rendered in the future, because it was paid on the termination of the services of the employee. The reason for the payment is the contract and the reasons underlying the contract were important only during the period of negotiation. The contract once entered into rendered all negotiations immaterial in the absence of an ambiguity.

As we understand the parties it is agreed Celia Simental complied with all the formalities of the statute in the making of the application and is entitled to receive the benefits unless the Company be correct in its position and contention. The Statute, Art. 5221b–17(n) supra, defines wages to mean all remuneration for personal services, including commissions and bonuses and the cash value of all remuneration in

any medium other than cash. "An individual shall be deemed 'totally unemployed' in any benefit period during which he performs no services and with respect to which no wages are payable to him". Art. 522b–17(l).

Celia Simental clearly, as is admitted, performed no services during the period, or any period, subsequent to her discharge to which the Company would apply payments made to her. Having performed no services during such period no wages could be payable to her with respect to such period. If the agreement that such sums are wages be accurate, then the wages must be applicable to some period with respect to which and during which she did perform personal services for the Company. The payments made by Western Union are computed under the contract on the length of prior service, without which service nothing is earned, whereas the unemployment benefits are made on a basis of unemployment.

 It is urged the award violates the very spirit and letter of the Texas statute, supra, and in support thereof the preamble of the Act is quoted and special emphasis laid on that portion which says: "Past experience has further shown that oftentimes workers are unemployed through no fault of their own and of necessity, are required to live by public charities. It is the purpose of this legislation, and the Legislature declares it to be the purpose of the State by this enactment to provide an orderly system of contributions for the care of the justifiably unemployed during times of economic difficulty, thereby preserving and establishing self-respect, reliance, and good citizenship." Acts 1936, 3d Called Sess., c. 482.

The preamble correctly describes the plight of many workers during the period immediately preceding the enactment of the law in the year 1936, but the Act does not prescribe economic necessity and need as a qualifying condition requisite to the receipt of benefits provided by it, nor disqualify nor render ineligible one who possesses means of support, or one who has been otherwise provided such support during a transition period of employment, nor

220

does it provide one who has received a separation allowance shall be ineligible to receive the benefits. It provides certain conditions and facts shall disqualify and render one ineligible, but these urged here by the Company are not among them. The Legislature might well have disqualified one under such circumstances, but it did not do so, nor may we do so by construction. Applicable here is the general rule of statutory construction, that the express mention or enumeration of a person, thing, consequence or class is equivalent to an express exclusion of all others. State v. Mauritz-Wells Co., 141 Tex. 634, 175 S.W. 2d 238(T).

The Supreme Court of Texas has held the benefits accruing to an employee under this statute are not gratuities, and in that connection says: "All employees who labor or perform services for employers who are covered by this Act labor or serve in part for the right to enjoy the benefits of this unemployment fund." Friedman v. American Surety Co., 137 Tex. 149, 151 S.W.2d 570, loc. cit. 578(13).

The clear implication is, we think, "labor or serve" while employed and engaged in service.

Moreover, regarding the sums as wages, as agreed, it is held In re Public Ledger, Inc., 3 Cir., 161 F.2d 762, 773, that vacation pay and severance pay are allocable to the period in which services are performed and illustrate saying: "Two weeks' pay was allowed to employees who * * * worked more than 6 months and less than 1 year. Thus, an employee had to work a given length of time before he could earn a right to severance pay, due on discharge. That is, as he went along in his employment, he was earning each day a certain amount of severance rights, to become due * * * if and when he was discharged. Thus, the severance pay was a debt which was allocable against the period in which it was earned."

It is our opinion and conclusion, therefore, the judgment of the trial court is correct, and it is affirmed.