

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

September 19, 1974

The Honorable Henry Rothell
Administrator
Texas Employment Commission
Austin, Texas 78778

Opinion No. H- 404

Re: Effect of guaranteed annual income plan on an employee's eligibility for state unemployment compensation.

Dear Mr. Rothell:

Your opinion request requires us to consider the impact a guaranteed annual income plan would have on an employee's eligibility for the state unemployment compensation payable under the Texas Unemployment Compensation Act, Art. 5221b-1, et seq., V.T.C.S. Before answering the five questions you have asked, a brief description of the plan is in order.

In 1971 an association of employers operating deep sea and coastal vessels out of Texas ports entered into a collective bargaining agreement with a union establishing a guaranteed annual income plan. Depending on the number of hours he worked in the three years prior to institution of the plan, each employee is guaranteed an annual income equal to the minimum number of hours of employment per contract year for which he received credit multiplied by the current straight-time hourly wage rate. The amount guaranteed the employee under this formula is reduced by his actual earnings during the contract year and by any unemployment compensation benefits he might have received. In addition the minimum number of paid hours any employee is guaranteed is reduced if he fails to accept all work available to him.

The plan requires individual employers in the association to contribute to a guaranteed annual income fund to be controlled and administered by the association on their behalf. Payments, if due, are made quarterly with a final adjustment at the end of the year. Overpayments are deducted from the individuals future guaranteed annual payments.

You first ask whether an individual who is covered by the guaranteed annual income plan would be eligible to receive unemployment compensation benefits during a period when he is out of work and consequently is not actually performing services for an employer.   The Texas Unemployment Compensation Act provides that before an individual is entitled to receive unemployment compensation during any benefit period certain conditions and requirements must be met.   Arts.  5221-2 and 5221b-3, V. T. C. S.   The only pertinent requirement is the one that an individual must be unemployed in order to receive benefits during a benefit period. Art.  5221b-2 (f),  V. T. C. S.   The Act provides that "[a]n individual shall be deemed 'totally unemployed' in any benefit period during which he performs no services and with respect to which no wages are payable to him. "  Art. 5221b-17(1),  V. T. C. S.   "Wages" is defined in the Act as "all remuneration paid for personal services,  including the cash value of all remuneration paid in any medium other than cash. "  Art.  5221b-17 (n),  V. T. C. S.

An individual who is not working manifestly is performing no services and therefore satisfies the first part of the "total unemployment" definition. But under the guaranteed annual income plan a union member who is out of work nevertheless continues to receive quarterly payments.  If these payments are wages payable to him with respect to the benefit period for which he seeks state unemployment compensation, then he is not "totally unemployed" during the benefit period and as a result is ineligible for state unemployment compensation.

In Attorney General Opinion WW-13 (1957) a question very similar to the one you have asked was presented to this office.  A collective bargaining agreement between a company and a union required the company to create and maintain a trust fund out of which payments were to be made to union members who has been laid off in order to supplement the state unemployment compensation benefits they would receive.  An opinion was requested as to whether receipt of these supplemental unemployment benefits would render individuals who had been laid off ineligible for state unemployment compensation.  This office had no difficulty in determining that the supplemental unemployment benefits were wages and,  as such,  must be allocable to some period during which the employee performed services for the company.  An employee performs no services for the company during a period when he is laid off.

Thus, this office concluded that the supplemental unemployment benefits were wages but were wages paid by the company in recognition of services performed by the employee prior to his lay-off and were not paid "with respect to " the benefit period during which unemployment compensation was sought. Accordingly, this prior Attorney General's Opinion determined that an individual who was receiving supplemental benefit payments during a period when he was laid off was nevertheless "totally unemployed" so as to be eligible to receive state unemployment compensation.

The rationale employed and the conclusion reached in Attorney General Opinion WW-13 are consistent with the case law on the subject. See, e. g. Western Union Tel. Co. v. Texas Employment Commission, 243 S. W. 2d 217 (Tex. Civ. App. -- El Paso 1951), dism'd w. o. j., 243 S. W. 2d 154 (Tex. 1951) and American Sugar Co. v. Doyal, 237 So. 2d 415 (La. App. , 4th Cir. 1970).

In our opinion it is difficult to distinguish payments pursuant to a guaranteed annual income plan and the supplemental unemployment benefits considered in Attorney General Opinion WW-13, insofar as their impact on an individual's eligibility for state unemployment compensation is concerned. They too are paid in recognition of services rendered prior to the time of unemployment. In fact the exact amount an individual will receive under the plan depends upon, and varies in accordance with, the number of hours he worked in the three years prior to adoption of the plan. In light of these precedents and legal authorities, we do not feel at liberty to characterize these payments as wages paid with respect to a period when the individual is out of work and is performing no services for an employer. In our opinion therefore, individuals receiving payment pursuant to the plan are nevertheless eligible for state unemployment compensation benefits. However, such benefits then may be deducted from any amount which would be due him under the guaranteed annual wage.

Your second question is:

> If the individual is entitled to unemployment insurance benefits during periods when he is not working, will subsequent payments under the guaranteed annual income plan be applied retroactively in establishing an overpayment in the individual's unemployment benefit account?

With respect to this question, you have referred us to Texas Employment Commission v. Busby, 457 S. W. 2d 170 (Tex. Civ. App. --Amarillo 1970, writ ref., n. r. e. ). In this case an individual who had been discharged from her job applied for and was granted state unemployment compensation benefits. In subsequent grievance proceedings it was determined that her discharge had been wrongful, and she was reinstated with back pay for the period of her discharge. The Texas Employment Commission (TEC) then ordered her to repay the unemployment compensation she had received. The court upheld this order reasoning that the back pay was wages payable with respect to the period of her discharge and receipt of benefits. Since wages payable with respect to her benefit period had been received, the individual was not "totally unemployed" during this period and was ineligible for the state unemployment compensation benefits she had been granted.

Implicit in your second question is the suggestion that payments under the guaranteed annual income plan might have the same effect on an individual's right to retain unemployment compensation benefits previously received as did the back pay awarded in Texas Employment Commission v. Busby, supra. We have considered this analogy and have encountered difficulty in resolving, in our own minds, its applicability here. Our legal research has led us to no additional case authorities that would aid us. While reasonable minds could differ, we have concluded that payments under the plan are unlike the back pay awarded in that case because they are not allocable to a benefit period in which no services are performed and unemployment compensation is received. Instead, as indicated in our answer to your first question, these payments are made in recognition of services performed and are allocable to periods of actual employment. Therefore the receipt of them does not, in our opinion, render an individual liable for the repayment of any unemployment compensation previously received when out of work.

In your third question you ask whether the TEC is required to furnish the association administering the plan on behalf of the employers with information as to the amount of unemployment compensation benefits paid individuals covered by the plan. Subject to certain exceptions, the Open Records Act, Art. 6252-17a, V. T. C. S., makes public all information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business.

The TEC is a "governmental body" as that term is defined in the Act and, as such, is required to disclose all information it maintains in pursuit of its official business unless one of the exceptions set out in Sec. 3(a) of the Act is applicable.

Section 3(a)(1) of the Act excepts from mandatory disclosure information deemed confidential by law.  Under Art. 5221b-9(e) of the Texas Unemployment Compensation Act the TEC is authorized to secure from employers any information about their employees deemed necessary to the effective administration of the Act and, if deemed necessary, to keep such information confidential.  Information of this kind would be excepted from the mandatory disclosure requirements of the Open Records Act by Sec. 3(a)(1).

But information as to the amount of unemployment compensation benefits paid particular individuals or groups of individuals does not fall into this category.  It is not information about employees collected from employers, and therefore the TEC is not authorized to keep it confidential by Art. 5221b-9(e) of the Texas Unemployment Compensation Act.  To our knowledge no other law makes information of this kind confidential, nor does it fall within any of the other exceptions set out in Sec. 3(a) of the Open Records Act.  In our opinion, then, information as to the amount of unemployment compensation benefits paid an individual is public information and, upon request, must be disclosed by the TEC to the association administering the guaranteed annual wage plan.

Your fourth question is:

> Are the payments made under the guaranteed annual income plan to be considered 'wages' as that term is defined in the Texas Unemployment Compensation Act, for purposes of levying the unemployment tax and for purposes of crediting employees with wage credits for future entitlement to benefits?

"Wages" is defined in the Act as "all remuneration paid for personal services, including the cash value of all remuneration paid in any medium other than cash."  Art. 5221b-17(n), V. T. C. S.  Guaranteed annual payments clearly fall within this definition.  They are paid in recognition of prior services rendered, and the amount of them depends on the number

of hours actually worked during years prior to adoption of the plan. American Sugar Co. v. Doyal, supra; see also Friedman v. American Surety Co. of New York, 151 S.W. 2d 570 (Tex. 1941); Western Union Tel. Co. v. TEC, supra, Attorney General Opinion WW-13 (1957), and Rev. Rul. 73-22, I.R.B. 1973-2. Therefore these payments should be taken into account for purposes of levying the unemployment tax, Art. 5221b-5, V.T.C.S., and should be credited to employees when determining their entitlement to unemployment compensation benefits, Art. 5221b-1, V.T.C.S.

Your final question is:

> If the payments made under the guaranteed annual income plan are deemed to be wages, who is the employer?

The Texas Unemployment Compensation Act provides that an individual or organization is an "employer" if it is an "employing unit". Art. 5221b-17, V.T.C.S. "Employing unit" is defined as "any individual or type of organization . . . which has or, subsequent to January 1, 1936, had in its employ one (1) or more individuals performing services for it within this State." Art. 5221b-17(e), V.T.C.S.

Under the guaranteed annual income plan the association is responsible for administering the fund and making quarterly payments to eligible union members. But in this matter the association is merely acting as an agent for its component members. No services are performed for it by recipients of payments from the fund. Instead it is the individual members of the association whose contributions create and sustain the fund and for whom services are performed by union members. In these circumstances it is our opinion that the individual members of the association, rather than the association itself, are the "employers" for purposes of collecting the unemployment tax levied by the Texas Unemployment Compensation Act.

## S U M M A R Y

Receipt of guaranteed annual wage payments made in recognition of services performed and allocable to periods of actual employment does not render an individual who is out of work and performing no services for an employer ineligible

for state unemployment compensation.   Nor does receipt of such payments render an individual liable for repayment of state unemployment compensation benefits previously received during a period of actual unemployment.   Guaranteed annual wage payments are "wages" as that term is defined in the Texas Unemployment Compensation Act.   Information as to the amount of unemployment compensation benefits paid an individual is public information and, upon request, must be disclosed by the Texas Employment Commission.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee