THE HAWAII STATE TEACHERS ASSOCIATION, Appellant *v.* THE DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAII and THE DEPARTMENT OF EDUCATION, STATE OF HAWAII, Appellees.

NO. 5650

FEBRUARY 13, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

Certain probationary teachers, employed by the Department of Education for the contract period from September 1, 1972 to August 31, 1973, applied for unemployment compensation, claiming to be unemployed after June 8, 1973, the last day of instruction for the 1972-73 school year.[1] A decision by

---

[1] The record does not explain the presence of Hawaii State Teachers Association in this case. However, at all stages of the case it has been accepted as the proper representative in these proceedings of the teachers who applied for unemployment compensation. In the absence of challenge, we refrain from questioning the capacity of the Association to appear for the teachers.

the Department of Labor and Industrial Relations in favor of the claimants was appealed to a referee pursuant to HRS § 383-38, and reversed. The claimants obtained judicial review in the circuit court as provided by HRS § 383-41. The claimants now appeal from a judgment of the circuit court affirming the referee's determination that the claimants were not unemployed and were not entitled to unemployment benefits during the period from June 9, 1973 to August 31, 1973. We affirm.

The facts are not in dispute. Each of the appointment agreements under which the claimants were employed by the department provided for an employment period from September 1, 1972 to August 31, 1973, stated a monthly salary, reserved to the department the right not to re-employ the appointee and further provided: "Salary for each of the vacation months of July and August will be one-tenth of the gross earnings from September to June inclusive."[2] The agreements were subject to the regulations of the department, which provided in relevant part that the salaries were based upon a ten-month instructional program and should be construed to be earned during the ten months, and that salaries would be paid in semi-monthly installments over a period of twelve months, with the exception that salaries would be paid in a lump sum at the time of termination by resignation or retirement. It is not disputed that the claimants were free of all obligations under the appointment agreements after June 8, 1973, and could leave the country, accept other employment or engage in any activity they wished, without impairing their rights to receive salary payments.

By letter from the department, dated June 1, 1973, each of the claimants was informed that the department "will not be able to offer you another appointment until a clear employment picture is available. . . . In the event that vacancies become available, we shall open hiring to probationary teachers." The claimants were asked to indicate whether they wished to be considered for employment on September

---

[2] The ratio of actual days worked to total working days in the month was to be used for fractional pay calculations, by department regulation.

1, 1973. The letter did not purport to terminate the agreements and it is not contended that they did so or that the department was empowered to give them that effect.

HRS § 383-23, of the Hawaii Employment Security Law, provides for the payment of a benefit to each eligible individual who is unemployed, as defined in HRS § 383-1(16), in any week. HRS § 383-1(16) defines "unemployment":

(16) "Unemployment". An individual shall be deemed "unemployed" in any week during which he performs no services and with respect to which no wages are payable to him, or in any week of less than full time work if the wages payable to him with respect to such week are less than his weekly benefit amount. The department shall prescribe regulations applicable to unemployed individuals making such distinctions in the procedures as to total unemployment, part-total unemployment, partial unemployment, of individuals attached to their regular jobs, and other forms of short-time work, as the department deems necessary. "Week of unemployment" means a week in which an individual is deemed unemployed.

We are not referred to any significant departmental regulations under this section.

We are required to determine whether the claimants were unemployed after June 8, 1973 within the meaning of the term as defined above. Other relevant sections of Ch. 383 are set out below.[3]

---

[3] HRS § 383-1(19):

(19) "Weeks of employment" means all those weeks within each of which the individual has performed services in employment for one or more employers subject to this chapter or with respect to which he has received remuneration from one or more employers subject to this chapter in the form of vacation, holiday, or sickness pay or similar remuneration.

HRS § 383-2:

Definition of employment. As used in this chapter, unless the context clearly requires otherwise, "employment", subject to sections 383-3 to 383-9, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied.

HRS § 383-29(b):

Benefits based on service in an instructional, research, or principal administrative capacity in an institution of education shall not be paid to an individual for

For an individual to be unemployed in any week, (termed in Ch. 383 a "week of unemployment"), two conditions must exist, the first being that he performs no services in that week and the second being that no wages are payable to him with respect to that week. HRS § 383-1(16). Thus, an individual may perform no services in employment (as defined in HRS § 383-2) during a particular week and yet not be unemployed, if wages are payable to him with respect to that week. It is also express that a week in which an individual performs no services is a "week of employment", if with respect to that week he has received remuneration "in the form of vacation, holiday or sickness pay or similar remuneration." HRS § 383-1(19). Claimants argue, from a comparison of HRS § 383-1(19) and HRS § 383-2, that an individual may be unemployed in a week which is a "week of employment", it being contended that this is a term of art which is used to establish eligibility for those who have received insured wages for a specified number of weeks of employment during a base period and which is not used to determine whether an individual is employed or unemployed. We do not agree that HRS § 383-1(19) was included in Ch. 383 for so narrow a purpose, and we find it necessary to read HRS §§ 383-1(16) and (19) as in pari materia. We conclude that a period of unemployment, as defined in HRS § 383-1(16), cannot include a "week of employment", as defined in HRS § 383-1(19).

The appointment contracts referred to "salary for each of the vacation months of July and August". It is apparent that the portion of June during which the claimants were free of work obligation by reason of the termination of the instructional program was not different for present purposes from July and August. We consider that salary payable to the claimants with respect to the period from June 8, 1973 to August 31, 1973 was remuneration described in HRS §

---

any week of unemployment which begins during the period between two successive academic years, or during a similar period between two regular terms, whether or not successive, or during a period of paid sabbatical leave provided for in the individual's contract, if the individual has a contract or contracts to perform services in any such capacity for any institution or institutions of education for both such academic years or both such terms.

383-1(19), if not wages payable with respect to the period within the meaning of HRS § 383-1(16). Each of the weeks during which the appointment agreements remained in effect and the claimants remained entitled to such salary was a week of employment and in such weeks the claimants were not unemployed.

The claimants point to HRS § 383-29(b). This section denies benefits to a teacher who is unemployed between two successive academic years, for each of which he has a contract of employment. The claimants argue that they had no contracts to perform services for the 1973-74 academic years and are not deprived of benefits by this section, with the implication that they are therefore entitled to benefits. The significant aspect of this section, in our view, is that it creates a limited exception with respect to "any week of unemployment". Clearly, § 383-29(b) has no relevancy in the instant case.[4]

In order to place the claims asserted here in proper perspective, it is important to recognize that the structure of the appointment agreements, as providing twelve months of employment with ten months or less of services, had significance independently of the present question. Preferential hiring for any opening which might occur in September was granted to probationary teachers under departmental regulations. The claimants were State employees for purposes of the State retirement system, entitled to credit for the period of service as a State employee. HRS § 88-21. Benefits under health, dental and group life insurance plans as State employees were available to the claimants while regularly employed teachers, under HRS § 87-1. We hesitate to define precisely the benefits attributable to employment status under the

---

[4] The departmental regulations provided for payment of salary in a lump sum upon termination of the agreements by resignation. Had the claimants chosen to resign rather than retain their contract status, the lump sum payments received on resignation would not have been paid with respect to subsequent weeks, which would not have been weeks of employment for the reasons found here. The claimants might then have had HRS § 383-29(b) to face, its applicability to the claimants being dependent upon their contract status for the 1973-74 academic year. However, as pointed out *intra*, the termination of their agreements by the claimants would have deprived them of valuable incidental benefits.

appointment agreements, which were not the subject of argument, but enough has been said to demonstrate that they were substantial.[5] While the unpaid balance of salary earned by each of the claimants was available to the claimant in a lump sum upon resignation during this period, taking this step would have terminated the claimant's status as a probationary teacher and State employee and would have cost the claimant the incidental benefits of that status.

Our attention has been directed to *Industrial Commission of Colorado v. Sirokman,* 134 Colo. 481, 306 P.2d 669, (1957), and *Western Union Tel. Co. v. Texas Employment Commission,* 243 S.W. 2d 217 (Tex. Civ. App. 1951). In each of these cases a severance allowance was paid to an employee upon the termination of his employment, the amount being a multiple of a day's or week's pay determined by length of service. It was held that the terminated employees were unemployed from the date of termination, notwithstanding payment of the severance allowance. However, in each of these cases the employment contract had been terminated. As we have pointed out, the claimants in the present case did not exercise their options to resign and receive immediate payment of the balance of the agreed annual salary, but chose to retain the benefits of their employment status. The decisions in the cited cases are not in conflict with the conclusions we have reached. We express no opinion on the merits of these decisions.

The judgment is affirmed.

*Thomas Gill (Thomas M. Pico, Jr.,* on the briefs, *Gill & Pico* of counsel) for Appellant.

*M. Gay Conklin,* Deputy Attorney General, for Appellees.

---

[5] It was stipulated below that in the past a probationary teacher has been treated as entitled to in-service retirement plan benefits for the period of June, July and August if the teacher worked 20 hours or more per week during the work year and the appointment was on or before June 1 of that year, and that in-service benefits would include a substantial benefit if a claimant should die before the expiration of the appointment agreement. It was also stipulated that the claimants were entitled to preferential hiring as probationary teachers, and that some of the claimants had taken advantage of the benefits available during June, July and August to regularly employed teachers under the health, dental or group life insurance plans.