## ALLEN ET AL. *v.* MARYLAND EMPLOYMENT SECURITY BOARD

[No. 79, October Term, 1954.]

*Decided February 18, 1955.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON, and HAMMOND, JJ.

*Bernard G. Link* for the appellants.

*James N. Phillips,* with whom were *Edward D. E. Rollins, Attorney General,* and *Herbert L. Cohen, Special Assistant Attorney General for the Maryland Employment Security Board,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Under the Maryland Unemployment Compensation Act, one is entitled to receive benefits, as unemployed, in any week "during which he performs no services and with respect to which no wages are payable to him * * *." Code (1951), Art. 95A, Sec. 19 (1). The question which this appeal presents, on agreed and stipulated facts, is whether some ninety employees who rceived vacation pay from their employer at the time of lay-off for lack of work were unemployed following the lay-off—whether, in other words, the vacation pay was payable with respect to the week or weeks, as the invidiulal case may have been, immediately after the payments. The Employment Security Board found that the employees were not unemployed during the weeks in question, and denied benefits. The lower court affirmed.

The true meaning and effect of the applicable statutes must be decided in the light of the terms of the labor-management agreement between the employer and the employees' union. Art. XV of the agreement deals with vacations. An employee with from one to five years continuous service "shall receive one week's vacation with pay"; an employee with from five to fifteen years service shall receive two weeks vacation with pay; and an em-

ployee with fifteen or more years of service shall receive three weeks vacation with pay; provided, in each instance, that he has worked at least 750 hours during the preceding calendar year. Vacation pay is calculated at the current hourly rate "at the time the vacation is taken or the vacation pay otherwise becomes payable." A vacation week is the average number of hours worked by the eligible employee for the past ten weeks but is to be not less than forty, nor more than forty-eight hours. If an eligible employee becomes disabled before he has had an earned vacation, he is paid his vacation pay when released. If he dies, it is paid to his survivors, and "an employee who is laid off and who has fulfilled the requirements for a vacation but has not received it, shall receive his vacation pay at the time of lay-off." If an employee quits or is discharged, he forfeits all vacation rights.

The vacation is to be taken, under section 7 of Art. XV of the agreement, between January 1 and December 31 "as operations of the company permit", although a vacation begun before December 31 is considered to have been taken in the year it began. It is stipulated that the practice is to permit employees to take vacations at the time of their own choosing, insofar as the work schedule permits. There is no provision in the agreement which allows an employee to continue his work, refuse a vacation and receive vacation pay as well as regular pay. Indeed, one provision of the agreement is that if the company fails to provide a vacation to an eligible employee during the stated period, the employee must be paid one and a half times the vacation pay due him.

The ninety workers, who are appellants, were laid off at various times from January to May, 1953. Promptly, they applied for unemployment benefits to be paid from the date of the lay-off and were refused for the first week or weeks thereafter—for the length of time it would have taken to earn the vacation pay which was paid them. It is agreed, entirely correctly we think, that the employees performed no services for the employer after

they were laid off, and that vacation pay is wages within the meaning of the statute. The decisive question is whether the money paid to the employees was payable with respect to the week or weeks immediately following the lay-off, or whether it was a bonus for services rendered during the preceding year.

The courts of other states have had to deal with similar questions and the decisions have varied as the facts, or the court's interpretation of the facts, fell on one side or the other of the line. The distinction which leads to the two different results is pointed up by the Supreme Court of Michigan. In *Renown Stove Co. v. Michigan Unemployment Comp. Comm.*, 44 N. W. 2d 1, the employer laid off a number of its employees indefinitely, for lack of work. They began to draw unemployment benefits. Some three months later, the employer paid eligible employees vacation pay, some for one week and some for two weeks, for a vacation period beginning on a designated day. The Michigan statute disqualifies an employee for benefits for any week "with respect to which" he is receiving or has received payments in the form of "vacation with pay". Two groups of employees were involved, belonging to different unions. The Court said: "It was clearly the legislative intent, in enacting the disqualifying provisions * * * to disqualify an individual from benefits even for a period during which he did not work for his employer, if he received pay from his employer with respect to that period. The act discloses no legislative intent to make such disqualification for the period in question dependent upon whether the individual happened to have been working for the same employer the weeks immediately preceding and following such period, or to render the disqualification inoperative, if, during that self-same period, the individual * * * failed to relax because he lacked the assurance that immediately following said period he would be able to return to his old job. The controlling question in this case is, then, whether the employer did pay the employees for or with respect to the one or two week period which

commenced July 5th. If it did, then it follows that the employees received vacation with pay within the meaning of the statute and are disqualified from receiving benefits."

The court found, as to one group of employees whose union contract with the company provided for paid vacation, earned in a manner similar to those in the case at bar, that the pay received after the employees had been laid off for three months was with respect to the week or weeks beginning on the day designated by the employer. As to the employees who were members of the other union, a different result was reached, because the contract in their case provided that there should be given a vacation of so many hours' pay and that "employees will be permitted to receive 40 hours' or 80 hours' pay in lieu of the vacation". The court said that it was to be noted that: "* * * the employer did not have the option of laying employees off for one or two weeks, declaring the lay-off to be a vacation and designating the 40 or 80 hours' pay in lieu of vacation provided for in the contract, to be, in fact, vacation pay; on the contrary, the option rested with the employees to elect whether they would take vacation with pay or a bonus of 40 or 80 hours' pay in lieu of vacation with pay. The employees covered by this contract exercised their option and elected to receive a bonus * * * in lieu of a vacation with pay, as they had a right to do under the contract. The payment so received was, therefore, a bonus and not vacation pay and, in consequence, the employees involved did not receive a vacation with pay." See also *Hamlin v. Coolerator Co.* (Minn.), 35 N. W. 2d 616.

We think that the contract involved in the case before us, read with the statute, requires the decision which was reached as to the first group of employees in the Michigan case. Clearly, the contract contemplated that every eligible employee would receive a paid vacation, one which would have to be taken. Such employees had no option to continue to work and receive their usual wages and also the vacation pay in lieu of a vacation.

The company was penalized if it failed to provide the actual vacation. It is clear, and in argument was agreed, that the acceleration clauses in case of happening of disability, death or lay-off, before the taking of an earned vacation, were to prevent injustice. The money which was to be paid in such case was to compensate for a vacation which had been earned but not received. It was not to represent, as such, a bonus payment for work previously done. The appellants, of course, are right when they say that the vacation is earned during the preceding year, but from this does not follow that it is allocable to any part of the preceding year or is payable "with respect to" any part of the preceding year. Under the statute, the decisive question is not when was the vacation pay earned, but when is it payable. The very concept of a vacation and pay therefor is that they come to one because previously earned. Vacation pay is never earned during the time in which it is enjoyed. It is at least implicit from the contract that vacation pay is referable to the period of time which follows its payment because the contract provides that the rate of pay is the current rate "at the time the vacation is taken or the vacation pay otherwise becomes payable". If the company had given the vacation with pay in accordance with the terms of the contract and then, a day, a week, or a month after the end of the vacation, had laid off the employees, or, indeed, if it had given a vacation with pay and announced a lay-off beginning at the end of the vacation, it could not be argued plausibly that the pay which was given was not payable with respect to the week or weeks which constituted the vacation. In such situations, the cases have held the claimants were not unemployed during the vacation period. *Reid v. Board of Review, etc.* (Ohio), 97 N. E. 2d 31; *Kelly, et al. v. Administrator, Unemployment Comp. Act,* (Conn.), 72 A. 2d 54; *Consiglio v. Administrator, Unemployment Comp. Act* (Conn.), 81 A. 2d 351; *Blitz v. Corsi,* 91 N. Y. S. 2d 770, affd. by the Court of Appeals of New York, 96 N. E. 2d 889; *In re Mullen,* 100 N. Y. S. 2d 706.

In our view, the fact that the vacation pay was paid at the time of lay-off, rather than before, is not a distinction which should alter the result. The period of time with respect to which the payment is considered to be made can as logically come after the lay-off as before. Money which is vacation pay, when it permits the employee to take time off as an interval between periods of regular work, does not necessarily become a bonus merely because it is uncertain how soon after it is paid, regular work will be resumed. Presumably, the contract intended to insure that employees similarly situated should receive the same benefits. If the appellants are correct in their position, often this would not result. If, at the time of lay-off, one employee had already taken his earned vacation, and another, who had the same eligibility and the same rate of pay, had not, the latter would receive more money than the former to the extent of the unemployment compensation payable in the first week or weeks after the lay-off. We think that he statute does not require such a result and that it can reasonably be inferred that the contract did not contemplate it.

The employer-employee relationship is not completely severed at the time of lay-off. As shown by an exhibit made part of the stipulation, the employer charged the vacation pay as wages for the week or weeks which followed the lay-off. As wages, the payments would be subject to income tax and social security deductions and unemployment compensation contributions. Certainly, there continued, at least constructively, an employer-employee relationship for the length of time after the lay-off which the wages represented. Indeed, there continues a relationship between the employer and employees for eighteen months after a lay-off. During this period, the employees retain re-employment, seniority and other rights. It is significant that if an employee quits or is fired, he forfeits vacation rights entirely. In such case, there is, of course, a complete break in the employer-employee relationship.

The great weight of authority is that vacation pay is to be considered referable to so long a time following its payment as it would have taken to earn it. During such period, the recipient has not been considered by the Court to have been unemployed. Cases without significant distinction as to statutory and contract provisions, or other determinative facts, which so hold, include *Wellman v. Riley, Commissioner of Labor* (N. H.), 67 A. 2d 428; *Jones v. Calif. Empl. Stabilization Comm.*, 262 P. 2d 91; *Battaglia v. Board of Review, etc.* (N. J.), 81 A. 2d 186; *Grobe v. Board of Review of Dept. of Labor* (Ill.), 101 N. E. 95; *Renown Stove Co. v. Mich. Unempl. Comp. Comm., supra; Hamlin v. Coolerator Co., supra; American Central Mfg. Corp. v. Review Board* (Ind.), 88 N. E. 2d 256. See also annotation in 30 A. L. R. 2d 366, 81 C. J. S., *Social Security*, Sec. 159, p. 243.

The cases which reach a contrary result, are either distinguishable on the ground that the payments were bonuses, which were not referable to any period of time after the dismissal—*Western Union Tel. Co. v. Texas Employment Comm.*, 243 S. W. 2d 217; *Hubbard v. Michigan Unempl. Comp. Comm.*, 44 N. W. 2d 4; *Renown Stove Co. v. Michigan Unempl. Comp. Comm., supra; Claims of Yaeger*, 125 N. Y. S. 2d 537 (distinguishing and limiting the earlier New York case of *In Re Mullen*, cited above)—or are cases decided by intermediate appellate courts of New York—*Claims of Spinella*, 125 N. Y. S. 2d 853; and *Claims of Marshall*, 125 N. Y. S. 2d 854, and represent a minority view which we are not persuaded is sound.

We think there was ample evidence in the record to permit the Board properly to apply the principles of law laid down by the cases which form the majority view. The judgment appealed from is affirmed.

*Judgment affirmed, with costs.*