CHERYL S. KAMAURA, Appellant-Appellee, *v.* JOSHUA C. AGSALUD, Director of Labor and Industrial Relations, State of Hawaii, and DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAII, Appellees-Appellants, and HAWAIIAN AIRLINES, INC., Appellee

NO. 10094

(CIVIL NO. 80456)

AMY I. O'SULLIVAN, Appellant-Appellee, *v.* JOSHUA AGSALUD, Director of Labor and Industrial Relations, State of Hawaii, and DEPARTMENT OF LABOR AND INDUSTRIAL RELA-TIONS, STATE OF HAWAII, Appellees-Appellants, and HAWAIIAN AIRLINES, INC., Appellee

NO. 10095

(CIVIL NO. 81321)

FEBRUARY 18, 1986

BURNS, C.J., HEEN AND TANAKA, JJ

OPINION OF THE COURT BY TANAKA, J.

The State Director of Labor and Industrial Relations and the State Department of Labor and Industrial Relations (collectively DLIR) appeal the circuit court's reversals of the DLIR referees' decisions denying unemployment benefits to Cheryl S. Kamaura (Kamaura) and Amy I. O'Sullivan (O'Sullivan) (collectively Claimants). Since the Kamaura case (No. 10094) and the O'Sullivan case (No. 10095) involve similar facts and common questions of law, they were consolidated for argument and disposition.

The dispositive questions on appeal are:

1. Whether *Hawaii State Teachers Ass'n v. Department of Labor and Industrial Relations,* 56 Haw. 590, 546 P.2d 1 (1976) (hereinafter *HSTA*), retains its vitality and is applicable to the cases at bar; and

2. Whether the long term disability insurance benefits received by Claimants constitute "sickness pay or similar remuneration" within the meaning of Hawaii Revised Statutes (HRS) § 383-1(19) (1976).[1]

We answer yes to both questions and reverse.

Claimants were flight attendants with Hawaiian Airlines, Inc. (Hawaiian Air). Both became pregnant and stopped working as flight

---

[1]HRS § 383-1(19) states:

"Weeks of employment" means all those weeks within each of which the individual has performed services in employment for not less than two days or four hours per week for one or more employers subject to this chapter or with respect to which he has received remuneration from one or more employers subject to this chapter in the form of vacation, holiday, or sickness pay or similar remuneration.

attendants based on the advice of their respective physicians.[2] Each used up her accumulated sick leave and vacation benefits, then filed a claim for unemployment benefits.[3] However, each Claimant began receiving payments under the Long Term Disability Insurance (LTDI) program maintained pursuant to the collective bargaining agreement between Hawaiian Air and the Association of Flight Attendants, Claimants' labor union.[4]

As to each Claimant, the DLIR's Unemployment Insurance Division (UID) determined that Claimant was "not unemployed and ineligible for benefits." On administrative appeals, the DLIR's referees affirmed the UID's decisions.

Each Claimant then appealed to the circuit court which determined that Claimants were entitled to unemployment benefits and reversed the referees' decisions. DLIR now appeals.

I.

Since this is an appeal from the circuit court's review of an agency decision, we

apply the same review standards applied by the circuit court. Agency fact findings are reviewable for clear error. In contrast, an agency's legal conclusions are freely reviewable.

*International Brotherhood of Electrical Workers v. Hawaiian Tele-*

[2]Kamaura last worked on June 15, 1983, and O'Sullivan, on August 22, 1983.

[3]Kamaura filed her claim for unemployment benefits effective September 4, 1983, and O'Sullivan, effective September 11, 1983.

[4]The Long Term Disability Insurance (LTDI) program was a group insurance plan with The Travelers Indemnity Company of Rhode Island as the insurer. Hawaiian Air paid all premiums. Under LTDI, disability included inability to perform the job held at the time of disability due to pregnancy or childbirth. LTDI benefits equaled 60 percent of the flight attendants' average monthly salary earned for the three months immediately prior to the date of disability, but not to exceed $1,200 per month. The benefits commenced 90 days after the flight attendants' last day of active employment.

Kamaura's LTDI benefits of $1,069.28 per month commenced on September 14, 1983, and were to continue until March 10, 1984, six weeks following the anticipated time of delivery of her baby.

O'Sullivan's LTDI benefits of $1,068.83 per month commenced on November 20, 1983, and were to continue until May 11, 1984, six weeks following the anticipated time of delivery of her baby.

*phone Co.,* 68 Haw. ___, ___, 713 P.2d 943, ___ (1986). *See also Out-door Circle v. Harold K.L. Castle Trust Estate,* 4 Haw. App. 633, 675 P.2d 784 (1983).

Here, the referees' legal conclusions that the LTDI benefits received by Claimants are remunerations in the form of "sickness pay or similar remuneration" under HRS § 383-1(19) are the matters in contention. Those conclusions, reversed by the circuit court, are freely reviewable by this court.

## II.

To qualify for unemployment benefits an individual must be *unemployed.* HRS § 383-23 (1976). In defining "unemployment," HRS § 383-1(16) (1976)[5] provides in part that an individual is unemployed in any week "during which he performs no services and with respect to which no wages are payable to him[.]"

In construing HRS § 383-1(16), the supreme court has stated:

[W]e find it necessary to read HRS § 383-1(16) and (19)[6] as in pari materia. We conclude that a period of unemployment, as defined in HRS § 383-1(16), cannot include a "week of employment", as defined in HRS § 383-1(19).

*HSTA,* 56 Haw. at 593, 546 P.2d at 4 (footnote added). Thus, under *HSTA,* even if an individual performs no services in employment during a particular week, if he receives HRS § 383-1(19) remuneration with respect to that week "in the form of vacation, holiday or sickness pay or similar remuneration," he is not unemployed and is ineligible for unemployment benefits.

---

[5]HRS § 383-1(16) reads in its entirety as follows:

"Unemployment". An individual shall be deemed "unemployed" in any week during which he performs no services and with respect to which no wages are payable to him, or in any week of less than full time work if the wages payable to him with respect to such week are less than his weekly benefit amount. The department shall prescribe regulations applicable to unemployed individuals making such distinctions in the procedures as to total unemployment, part-total unemployment, partial unemployment, of individuals attached to their regular jobs, and other forms of short-time work, as the department deems necessary. "Week of unemployment" means a week in which an individual is deemed unemployed.

[6]*See* n.1, *supra.*

Claimants contend, however, *HSTA* "is of questionable validity" in the light of *Agsalud v. Lee,* 66 Haw. 425, 664 P.2d 734 (1983). Because *Lee* neither cited *HSTA* nor referred to HRS § 383-1(19), Claimants argue that HRS § 383-1(16) only requires a showing that they (1) performed no services and (2) were paid no "wages." They claim that they clearly performed no services and that LTDI benefits are excluded as "wages" under HRS § 383-11(1) (1976).[7] We disagree.

The issue in *Lee* was different from that in *HSTA*. *Lee* was decided under the "alternative test for 'unemployment' in § 383-1(16)[,]" namely, "[w]here an individual performs less than full-time work during a week and the wages payable to him with respect thereto are less than the weekly unemployment benefit payable to a person with his work history and earnings record[.]" *Lee,* 66 Haw. at 429, 664 P.2d at 737.

Moreover, in the recent case of *Agsalud v. Blalack,* 67 Haw. 588, 699 P.2d 17 (1985), the supreme court cited *HSTA* and held:

For an individual to be unemployed in any week, two conditions must be met: 1) claimant must perform no services in that week; and 2) that no wages or other remuneration similar to vacation, sickness or holiday pay, are payable with respect to that week.

*Blalack,* 67 Haw. at ___, 699 P.2d at 18.

*HSTA* remains viable and its test is applicable to the cases at bar.

## III.

Contrary to the referees' determinations, the circuit court concluded that the LTDI benefits "do not constitute 'sickness pay or similar remuneration' under HRS § 383-1(19)." DLIR asserts that the circuit

---

[7]HRS § 383-11(1) provides:

§ 383-11 Excluded payments. "Wages" does not include:

(1) The amount of any payment (including any amount paid by an employing unit for insurance or annuities, or into a fund, to provide, for any such payment) to, or on behalf of, an individual or any of his dependents under a plan or system established by an employing unit which makes provision generally for individuals performing service for it (or for such individuals generally and their dependents) or for a class or classes of such individuals (or for a class or classes of such individuals and their dependents), on account of (A) retirement, or (B) sickness or accident disability, or (C) medical or hospitalization expenses in connection with sickness or accident disability, or (D) death[.]

court's conclusion is wrong. We agree with DLIR.

In the instant cases, DLIR's Disability Compensation Division approved the "sick leave or wage replacement provision" of Hawaiian Air's collective bargaining agreement with the Association of Flight Attendants as satisfying the requirements of the Hawaii Temporary Disability Insurance (TDI) Law, HRS Chapter 392.[8] The TDI statute clearly evinces a legislative intent that there should be no duplication of TDI and unemployment benefits.[9] We conclude from the record that Hawaiian Air's LTDI program is a sick leave or wage replacement provision within the meaning of the equivalency approval.

The TDI Law was enacted to provide employees in private employment "reasonable compensation for wage loss caused by disabling nonoccupational sickness or accident where the disability is temporary in nature and exceeds the period of one work-week." HRS [§ 392-2] (1976). Disability includes the inability to perform employment duties caused by pregnancy. HRS § 392-3(5) (1976). In our view, a TDI benefit payment constitutes "sickness pay or similar remuneration" within the meaning of HRS § 383-1(19) because both sickness pay and TDI benefits become payable upon an employee's physical inability to perform his employment services.

Moreover, unlike *Blalack, supra,* where severance pay was involved, in the instant cases neither Claimant's employment with Hawaiian Air was terminated.

Accordingly, we hold that the LTDI benefits paid to Claimants

---

[8]HRS § 392-41(a)(5) (1976 and Supp. 1984) provides in part:

(a) An employer . . shall secure temporary disability benefits for [its] employees in one or more of the following ways.

\* \* \*

(5) By a new plan or agreement. On or after January 1, 1970 a new plan or agreement with an insurer may be accepted by the director as satisfying the obligation to provide for the payment of benefits under this chapter if the plan or agreement provides benefits at least as favorable as the disability benefits required by this chapter . . . .

[9]HRS [§ 392-28] (1976) reads in part:

Duplication of benefits not permitted. No temporary disability benefits shall be payable for any period of disability for which the employee is entitled to receive:

(1) Weekly benefits under the Employment Security Law or similar laws of this State or of any other state or of the United States, . . . .

constituted "sickness pay or similar remuneration" and that the circuit court erred in reversing the referees' decisions.

Reversed and remanded to the circuit court with instruction to reinstate the DLIR's referees' decisions.

*Wilfredo Tungol* (*Wendy K. Lang* on the briefs), Deputy Attorneys General, for appellees-appellants.

*Herbert R. Takahashi* (*Herbert R. Takahashi,* Attorney at Law, A Law Corporation, of counsel) for appellants-appellees.